IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL WALSH,    :  CIVIL ACTION **3:CV-06-0504**
          :
   Plaintiff     :  (Judge Munley)
          :
   v.       :  (Magistrate Judge Blewitt)
          :
BANK OF AMERICA,    :
          :
   Defendant    :

## REPORT AND RECOMMENDATION

### I. Background.

The Plaintiff, Michael Walsh, filed, through counsel, this disability employment discrimination action on March 8, 2006, against Defendant Bank of America ("BOA"), pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* Count I, and the Pennsylvania Human Relations Act ("PHRA") 43 P.S. §955(a), *et seq.* , Count II. (Doc. 1). Plaintiff essentially  alleges that Defendant discriminated against him due to his Post Traumatic Stress Disorder ("PTSD") disability and terminated him without giving  him a requested accommodation, in violation of the ADA and PHRA.  Plaintiff was employed by Defendant as a Customer Service Representative ("CSR") from December 1999 through May 2005.

Defendant filed its Answer to the Complaint, with Affirmative Defenses, on May 3, 2006. (Doc. 3).  Following the close of discovery, on April 30, 2007, Defendant filed a Summary Judgment Motion.  (Doc. 29).  When most of the supporting and opposing filings of both parties were submitted regarding Defendant's Summary Judgment Motion, including Plaintiff's Affidavit and Counterstatement of Facts ("COF"), on June 28, 2007, Defendant filed a Motion to Strike Portions

of Plaintiff's Affidavit and Counterstatement of Facts contained in his opposing Brief to its Summary Judgment Motion. (Doc. 55).[1]  Defendant simultaneously filed a Brief in support of its Motion to Strike, with Exhibits.  (Doc. 56).  On July 3, 2007, Plaintiff filed his response Brief.  (Doc. 57).

On August 29, 2007, the Court issued an Order granting Defendant's Motion to Strike  (Doc. 55), and directed that all references to "Dr. Soto," an alleged psychiatrist employed by Defendant, as contained in Plaintiff's deposition, in his COF, and in his Affidavit (Doc. 52, Ex. O, ¶ 97.) were STRICKEN, and that these references were corrected to be referring to Dr. Santos of the VA.  (Doc. 59).  Thus, there is no "Dr. Soto" in this case.

Defendant's Summary Judgment Motion is now ripe for disposition.  (Docs. 29, 30, 32, 35, 36,37, 38 and 58, Defendant's filings).[2] (Docs. 48, 50 and 52, Plaintiff's filings).  Presently ripe for disposition is Defendant's Summary Judgment Motion filed on April 30,  2007.  **(Doc. 29).**[3] Defendant argues that it is entitled to summary judgment with respect to Plaintiff's disability discrimination claims under both the ADA and PHRA because Plaintiff's evidence fails to establish

---

[1]Plaintiff's Affidavit is found at Doc. 55, Ex. O, and Plaintiff's Counterstatement of Facts ("COF") is Doc. 50.

[2]Several of Defendant's filings with respect to its Summary Judgment Motion are docketed incorrectly and contain multiple docket numbers on a single filing.  Essentially, Doc. 29 is Defendant's Summary Judgment Motion, Doc. 33 is Defendant's support Brief, Doc. 36 is Defendant's SMF with exhibits, Doc. 32 is Williamson's Affidavit with attached Exhibits, Doc. 35 is Defendant's support case law, and Doc. 58 is Defendant's Reply Brief.

[3]We  note that the present Summary Judgment Motion seeks the entry of judgment on behalf of Defendant with respect to both Plaintiff's ADA and PHRA claims of his pleading, Counts I and II, Doc. 1.

a *prima facie* case that he is disabled and that he was terminated due to a disability.[4]  Plaintiff avers that he exhausted his administrative remedies with the EEOC and PHRC before he filed this action. (Doc. 1, p. 2, ¶4.).

## II.  Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem*. 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

---

[4]The parties have not consented to proceed before the undersigned for all matters pursuant to 28 U.S.C. § 636(c). (Doc. 5).   We have thus been assigned this case only for pre-trial matters.

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d *v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

## III. Allegations of the Complaint.

The Plaintiff alleges that he began working for Defendant BOA in December 1999 as a Customer Service Representative, that at the relevant time he was 58 years old, and that he suffers from PTSD, which he alleges is a disability.  There is no dispute that Plaintiff was employed by Defendant from December 1999 through May 18, 2005, when he was terminated, and at the time of his termination he was a Customer Service Representative ("CSR").  (Doc. 3, pp. 2-3).  Plaintiff avers that he advised Defendant's representatives of his disability in January 2000, by notifying his

4

supervisor Maureen Williamson.  (Doc. 1, pp. 2-3).[5]  Plaintiff avers that during January 2005, his disability began to affect this thought  process due to a change in his medication.   Plaintiff sates that on May 18, 2005, Dorothy Walker, VP of Customer Service Unit, and Patricia Solts, Customer Service Team Manger, terminated him due to his PTSD disability.  (*Id.*, p. 3).  As stated, there is no dispute that Plaintiff's employment with Defendant was terminated on May 18, 2005.  (Doc. 3, ¶ 13.).

Plaintiff avers that the reasons for his termination were pretextual, namely, that he failed to follow job procedures and that he provided information to persons who were not customers of Defendant.  (Doc. 1, p. 3).  Plaintiff states that other employees who did not have a disability had similar claims of improper job performance made against them.  Plaintiff avers that he requested an accommodation in the nature of a change in his hours, but that his request was denied.  (*Id.*). Plaintiff states that he was replaced by a non-disabled individual.   Plaintiff concludes that "Defendant discriminated against the Plaintiff by terminating him due to his non-work related disability in violation of the [ADA and PHRA]".  (*Id.*, ¶ 19.).

As stated, in Count I, Plaintiff asserts his ADA claim, and in Count II, he raises his PHRA claim. (Doc. 1).  Defendant moves for Summary Judgment with respect to both of Plaintiff's claims. (Doc. 29).

In Count I, Plaintiff alleges that he had a disability that Defendant was aware of, which was permanent in nature, and that he was capable of performing the essential functions of his job with

---

[5]As noted, Williamson submitted an Affidavit in support of Defendant's Summary Judgment Motion, Doc. 32.

an accommodation. He states that he was significantly limited in major life functions due to his disability, and that he requested reasonable accommodation of a change in hours. Plaintiff alleges that Defendant refused to give him his requested accommodation. (*Id.*, ¶'s 20.-27.). Thus, Plaintiff alleges that on May 18, 2005, he was terminated from his position as a CSR with Defendant BOA due to his disability.

As mentioned, Plaintiff avers that he has filed a claim of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (*Id.*, ¶ 4. ). Defendant admits that he filed such a charge on August 24, 2005. (Doc. 3, ¶ 4.). Plaintiff does not state if the EEOC issued a Notice of Right to Sue. (*Id.*, ¶ 4.).

## IV.  Undisputed Material  Facts.

Defendant has filed its Statement of Material Facts ("SMF"), ¶'s 1.-73., with attached exhibits on April 30, 2007, along with its Summary Judgment Motion. (Doc. 36). Plaintiff has responded to Defendant's SMF's in his COF. (Doc. 50, pp. 1-21).[6]  Both parties have relied upon evidence in the record to support their SMF's and responses thereto.[7]

---

[6]As stated above, on August 29, 2007, the Court issued an Order granting Defendant's Motion to Strike  (Doc. 55), and directed that all references to "Dr. Soto" as contained in Plaintiff's deposition, in his COF, and in his Affidavit were stricken, and that these references were corrected to be referring to Dr. Santos of the VA.  (Doc. 59).  Thus, contrary to Plaintiff's averment in his Affidavit, Doc. 52, Ex. O, ¶ 97., he did not discuss an accommodation with Dr. Soto, a psychiatrist from Defendant BOA.  Also, Plaintiff's deposition testimony that he discussed working part-time with Dr. Soto, a psychiatrist from BOA, is not correct. (Doc. 52, Ex. A, NT 122).

[7] Plaintiff generally objects to Defendant's SMF's since they largely contain several facts in one paragraph contrary to Local Rule 56.1, M.D. Pa.  (Doc. 50, p. 1).  We agree with Plaintiff and find that several of Defendant's SMF's are not short and concise, and find that they contain

Since the following paragraphs of Defendant's SMF (Docs. 36 and 50) are admitted, in whole or in part, as indicated below, we shall adopt them as our own:[8]

¶'s 1.-5. are admitted;

¶ 7. is admitted;

¶ 8. is admitted to the extent that Plaintiff successfully completed a six-week training program at the time of his hire in 1999,  and that during his employment with Defendant, he was given additional training. However, Plaintiff claims that he was not given proper training time and that during 2005, he was not given the training that other employees received who did not have a disability;

¶ 9., admitted, and Plaintiff states that the Defendant's procedures were important to both Defendant and to him;

¶ 10., admitted, except that Plaintiff disputes that Williamson was his supervisor from December 1999 through early 2005 with "only temporary exceptions."  Plaintiff states that Williamson was his supervisor "on and off between December 1999 and early 2005;"

¶ 11., admitted, except that Plaintiff states Dorothy Walker was not only a Manager, but that she was also the Vice President Unit Manger who oversaw the supervisors of the CSR's;

---

multiple facts in one paragraph. *See, e.g.,*  Doc. 36, ¶'s 7.-12., 23., 25.  Defendant's multi-fact SMF's have prevented Plaintiff from giving short and concise responses to them, and have made it more difficult for the Court to determine the extent they are not disputed.  Defendant's counsel is directed to comport with the Local Rules of this Court in all future filings.

[8]The numbered paragraphs of Defendant's SMF's with no comment are adopted in full as undisputed.  Due to the numerous SMF's, we do not re-state the text of the paragraphs which we find to be undisputed.

¶ 12., admitted to the extent that Plaintiff volunteered to work the 7:00 a.m. to 3:00 p.m. shift because Defendant was looking for employees to work this shift;

¶ 13., admitted;

¶14., admitted, except that Plaintiff denies that his communication area of development needed improvement;

¶ 15., admitted to the extent that Plaintiff's 2003 and 2004 evaluations speak for themselves (Doc. 32, Exs. 2 and 3, Doc. 52, Exs. I and J)[9];

¶ 16., admitted;

¶ 17., it is undisputed that all of Defendant's CSR's were routinely monitored and evaluated, but Plaintiff states that he was constantly monitored and monitored more than all others;

¶ 22., admitted to the extent that Plaintiff received a score of 57.58% from the April 29, 2005 H&R Block call (Doc. 36, Ex E, ¶ 7. );

¶31. is admitted, and Plaintiff states that Williamson was aware of his disability back in 2000 and was again informed of it in 2003/2004;

¶ 32., is admitted, and Plaintiff states that Williamson was aware that accommodations must be made for disabilities and that she should have conducted an investigation; and

¶ 33., is admitted to the extent that Plaintiff was on a team supervised by Slattery and Shultz, but Plaintiff denies that Shultz was unaware of his PTSD disability.

_____

[9]Williamson's Affidavit was inexplicably docketed as Docs. 32, 37 and 38.  However, we shall refer to it as Doc. 32.  Williamson's Affidavit was apparently supposed to have been attached to Doc. 36, as Ex. D, but it was omitted and then separately docketed as Docs. 32, 37 and 38.

While ¶ 18. of Defendant 's SMF, Doc. 36, is not admitted by Plaintiff since he does not have sufficient knowledge regarding this statement, we find it to be undisputed in light of the evidence cited by Defendant to support ¶ 18.

Also, ¶ 19. of Defendant's SMF, Doc. 36, is not admitted by Plaintiff since he does not have sufficient knowledge regarding this statement. However, we find ¶ 19. of Defendant's SMF, Doc. 36, to be undisputed in light of the evidence cited by Defendant to support ¶ 19.

Although, ¶ 20. of Defendant 's SMF, Doc. 36, is denied  by Plaintiff, he testified that 81.82% was a passing score for a call evaluation.  (Doc. 36, Ex. C,  NT 63).  We find ¶ 20. of Defendant 's SMF, Doc. 36, to be undisputed in light of the evidence cited by Defendant to support ¶ 20.  (Doc. 36, Ex E, ¶ 5. ).

Paragraph 21. of Defendant's SMF, Doc. 36, is denied by Plaintiff to the extent that he states that there was not a valid reason to give him scores of 57.58%.  However, we find ¶ 21. of Defendant's SMF, Doc. 36, to be undisputed in light of the evidence cited by Defendant to support ¶ 21. (Doc. 36, Ex. E-5. and Ex. E-1 ).

Paragraph 23. of Defendant's SMF, Doc. 36, is denied by Plaintiff, and this paragraph contains multiple facts, in violation of Local Rule 56.1.  However, in light of the evidence cited by Defendant to support ¶ 23., we find ¶ 23. to be undisputed insofar as it states that on several occasions when Plaintiff reported to Williamson, his calls were scored below the 81.87% mark required for a passing score.  (Doc. 36, Ex E, ¶ 6.).

Paragraph  24. of Defendant's SMF, Doc. 36, is denied as stated by Plaintiff.  However, we find ¶ 24. of Defendant's SMF, Doc. 36, to be undisputed in light of the evidence cited by

Defendant to support ¶ 24. (Doc. 36, Ex E, ¶ 7. and Ex. 5 attached thereto).  Plaintiff's COF with respect to ¶ 24., insofar as he states that he requested an accommodation of 6-hour work days during 2004, due to his PTSD, is also supported by Plaintiff's evidence.  (Doc. 52, Ex. O, ¶ 96.).

Paragraphs 25. through 30. and 34. of Defendant's SMF, Doc. 36, are denied by Plaintiff. However, with respect to ¶25., it is admitted that in early February 2005, Williamson gave Plaintiff an Action Plan. (Doc. 32, Ex. 6).  As to what the Action Plan stated, we shall refer to the Action Plan itself, (Doc. 52, Ex. E and Doc. 32, Ex. 6).[10]

With respect to ¶ 26. of Defendant 's SMF, Doc. 36, the  evidence reveals that there was no Action Plan which was signed by Plaintiff.[11]

With respect to Defendant's SMF, ¶27. and ¶ 28, the evidence shows that when Plaintiff received the Action Plan in January 2005, and was given a verbal warning, he signed a paper.  The evidence also shows that at this time  in January 2005, Williamson told Plaintiff that he was getting low scores and that he had to get better scores.  Plaintiff told Williamson that the VA changed his medication, that  it was not working right, and that it had to be tweaked.  (Doc. 36, Ex. C, NT 72-73).  Plaintiff told Williamson that Prozac was added to his Zoloft medication.  (*Id.*, NT 76).

According to Plaintiff's testimony, Williamson was aware he was a disabled veteran in 2000 when he started to work for Defendant.  Plaintiff did not remember if he told Williamson at that time that he had PTSD.

---

[10]Defendant refers to Exhibits 9 and 10 attached to the Williamson Affidavit, Doc. 32, but as Plaintiff notes, there are only 6 Exhibits attached to her Affidavit.

[11]*See* note 9 above.

Plaintiff told Williamson specifically that he had PTSD when her son was going to Iraq, in 2003 or 2004. (*Id.*, NT 82-84). At this time, Plaintiff did not tell Williamson that his PTSD had any effect on his job since he was doing fine at work. (*Id.*, NT 86). Sometime in 2004, Plaintiff raised the issue of going part-time on several occasions with Williamson. Plaintiff told Williamson that he wanted to work six hours a day. "I didn't tell her no reason. It was like – if you have PTSD and – they said they would accommodate me and they were supposed to accommodate me. They never gave me the accommodation toward the six hours." (*Id.*, NT 124).

With respect to Defendant's SMF ¶ 29., the evidence also shows that in January 2005, Plaintiff left work early after he told Williamson about his medication change and that he was a nervous wreck. However, Plaintiff returned to work the next day. Plaintiff stopped taking the Prozac and Zoloft and did not have any follow-up conversation with Williamson at this time. (*Id.*, NT 76-77).

With respect to Defendant's SMF ¶ 30., Plaintiff testified as follows:

> Q.     Were you able to understand what the job required when you were working?
>
> A.     I was able to understand what the job required, except the period when I was on that medication for a couple of weeks and I was a little shaky.
>
> Q.     In early January /05?
>
> A.     Yeah, when I twiqued (sic) the medicine it would be all right after that point. I thought it was making  - - when I asked for help, that I needed help, I didn't hear nothing.
>
> Q.     So aside from that two-week period in January of /05  - -
>
> A.     I thought I was pretty good.

11

        Q.     - - you were able to concentrate and have conversations and so forth?

        A.     That's my opinion, yes.

(Doc. 36, Ex. C, NT 172).

With respect to Defendant's SMF ¶ 34., according to Shultz's Affidavit, who was Plaintiff's supervisor after Williamson in March and April 2005, Plaintiff's call performance continued to suffer, and during the beginning of March and April 2005, he received at least five scores below the minimum of 81.82%. (Doc. 36, Ex. E, ¶ 5.). Plaintiff testified that May 3, 2005, was the first time that anybody told him that he was having a problem when he asked Shultz about the small score on his sheet. (Doc. 36, Ex. C, NT 91-92).

With respect to Defendant's SMF ¶'s 35.-36., Plaintiff testified that he received a second verbal warning from Shultz in April 2005, after he got a score of 72 for a call. (*Id.*, NT 137-138). Plaintiff told the customer that she did not receive a prior rebate, and that if she was going to get a couple tomorrow, he would give her one at that time. Plaintiff stated that he stopped the customer from calling back the next day to get more rebates. Shultz told Plaintiff that his call response was not in the best interest of Defendant. At this time, Plaintiff did not mention his PTSD to Schultz. (*Id.*).

The evidence is disputed as to Defendant's SMF ¶ 37. Plaintiff claims that he did not violate Defendant's policy concerning the H&R Block call, and Shultz avers that he did.

With respect to Defendant's SMF ¶ 38., the evidence shows that after the H&R Block call, Plaintiff told Shultz that his doctor changed his medication for his PTSD, and that Shultz told him to bring in something to show that he had something wrong with him. Plaintiff showed Shultz a

paper that had his name on it and that mentioned PTSD.  (*Id*. NT 90-91, 99 and Ex. 1 to Plaintiff's deposition, Doc. 36, Ex. C).

While ¶ 39. of Defendant's SMF, Doc. 36, is denied by Plaintiff since he states that he does not have sufficient knowledge regarding this statement, we find ¶ 39. to be undisputed in light of the evidence cited by Defendant to support ¶ 39. (Doc. 36, Ex. E, ¶ 9. and Ex. E-2 attached).

With respect to Defendant's SMF ¶ 40., Defendant's HR Department instructed Shultz to request medical documentation from Plaintiff to show his work restrictions, and she requested this information from Plaintiff.  (Doc. 36, Ex. E., ¶ 10.).

With respect to Defendant's SMF  ¶ 41., the record indicates that Plaintiff showed Shultz a paper that had his name on it and that the paper mentioned PTSD.  (Doc. 36, Ex. C, NT 90-91. *See also* Plaintiff's deposition Ex. 1, attached to Doc. 36, Ex. C.).  Plaintiff also brought Shultz a pamphlet from the VA for the PTSD in-patient program.

With respect to Defendant's SMF ¶ 42., it is undisputed that Plaintiff did not submit additional materials with his medical restrictions, but Plaintiff states that no one ever asked him for more information.

With respect to Defendant's SMF ¶ 43., it is undisputed that after Plaintiff showed Shultz a paper that had his name on it and that mentioned PTSD, Shultz looked at it and said her father was a veteran.  (*Id*. NT 90-91).  It is disputed if Shultz made copies of Plaintiff's materials.  It is also disputed if Shultz had previously known that Plaintiff was a disabled veteran based on his Employee Profile.

With respect to Defendant's SMF ¶ 44., Defendant's evidence shows that on May 6, 2005, Shultz issued a "final written Counseling Performance" and Plaintiff signed it . (*Id*. NT 99 and Ex. E, ¶ 14., and attached Ex. 3).[12]

With respect to Defendant's SMF ¶ 45., Shultz avers that after Plaintiff was given the May 6 final written counseling until the end of his last shift on May 18, she monitored three of his calls, and all of the calls fell below the required standard of 81.82%.  (Doc. 36, Ex. E, second ¶ 14.). Plaintiff disputes that 81.82% was the standard.

With respect to Defendant's SMF ¶'s 46.-48., we find that Plaintiff's evidence does not dispute Defendant's facts contained in ¶'s 46. - 48.  However, Plaintiff states that his VA disability was posted in his Employee Profile with Defendant and, thus, his supervisors were aware of his disability and that he required and requested an accommodation.

¶ 49. of Defendant's SMF is admitted.

With respect to Defendant's SMF ¶'s 50.-51., we find that Plaintiff's evidence does not dispute Defendant's facts contained in ¶'s 50.-51. of its SMF.

¶ 52. of Defendant's SMF is admitted, except that Plaintiff states that Amanda Bodeck, another CSR with Defendant, was counseled by Williamson for shouting at customers.

---

[12]Shultz's Affidavit contains two ¶'s 14. and 15., Doc. 36, Ex. E.  Defendant's counsel is admonished with respect to Defendant's SMF.  First, as noted, it contains numerous factual statements in many paragraphs, which made it difficult for the Court to determine what was disputed and what was not.  Second, it misses, Ex. D, Williamson Affidavit and the referenced attachments to this Affidavit  beyond Att. 6, are missing.  Defendant 's counsel has also incorrectly docketed, with 3 entries, Williamson's separately filed Affidavit, which was supposed to be Ex. D to Doc. 36.  Third, Defendant 's counsel has incorrectly numbered the paragraphs of Shultz's Affidavit.

With respect to Defendant's SMF ¶'s 53.-56., we find that Plaintiff's evidence disputes Defendant's facts in ¶'s 53.-56.  Plaintiff testified as follows:

> Q.      When you raised the issue of going part-time with Ms. Schultz, did you give her any reason why you wanted to go part-time?
>
> A.      She stopped me right there and she said that I'll take care of it.  She didn't ask me.
>
> Q.      So you didn't give her any reason?
>
> A.      No.

(Doc. 36, Ex. C, NT 123).

Defendant's SMF ¶ 57. is admitted.  Plaintiff testified that he discussed with "Dr. Soto," a psychiatrist from the Defendant, about working part-time, *i.e.* six hours per day.  (Doc. 36, Ex. C, NT 122).   In his Affidavit, Doc. 52, Ex. O, ¶ 97., Plaintiff avers that prior to requesting the accommodation to work six hours per day with Defendant, he discussed it with his medical providers, including "Dr. Soto, a Psychiatrist from BOA."   However, as noted above, we have granted Defendant's Motion to Strike with respect to all references of "Dr. Soto" from Plaintiff's COF, his deposition and his Affidavit since Plaintiff conceded that no "Dr. Soto," an alleged psychiatrist from Defendant, existed.  Plaintiff has stated that these references to "Dr. Soto" of BOA refer to Dr. Santos of the VA.   Thus, all of Plaintiff's references to "Dr. Soto" in his COF, his deposition and Affidavit have been stricken.   (*See* Doc. 59, August 29, 2007 Order).   Further, to the extent Plaintiff avers in his Affidavit that prior to making his request for an accommodation to Defendant, he informed a psychiatrist of Defendant BOA that he wanted to work part-time, this averment is not correct.  (Doc. 52, Ex. O, ¶ 97. and Doc. 52, Ex. A, NT 122).

15

Defendant's SMF ¶ 58. is undisputed to the extent that Plaintiff felt he could financially afford to work six hours per day, and that working six hours would reduce his stress level and would extend his career at Defendant.  (Doc. 52, Ex. O, ¶'s 98.-100.).

Defendant's SMF ¶ 59. is undisputed insofar as Plaintiff's VA therapist, Joseph Wideman, opined that Plaintiff would have been able to continue to work if he had been given reasonable accommodations to reduce his stress, including Plaintiff's request that he be allowed to work six hours per day.  (Doc. 52, Ex. B).

Defendant's SMF ¶ 60. is admitted regarding Plaintiff leaving work early in January 2005, due to the change in his medication to treat his PTSD, but Plaintiff avers in his Affidavit that when he needed other time off due to PTSD, he would take personal, vacation and sick days.  (Doc. 52, Ex. O, ¶ 94.).  However, at his December 19, 2006 deposition, prior to his June 11, 2007 Affidavit, Plaintiff testified that, other than the time in January 2005, when he had to leave work early due to a change in his medication, there were not other times he had to miss work due to his PTSD. (Doc. 36, Ex. C, NT 176).[13]

Regarding Defendant's SMF ¶ 61., we agree with Plaintiff's COF with respect to this paragraph, since it is supported by his deposition testimony. (Doc. 36, Ex. C, NT 159-161, 173).

---

[13]As discussed below, we agree with Defendant and it specific examples (Doc. 58, pp. 3-6), and find that large portions of Plaintiff's subsequent Affidavit, to the extent that it contradicts his prior deposition testimony and the evidence in the record, should be disregarded as a sham affidavit.  *See Jiminez v. All American Rathskellar, Inc.*, 2007 WL 2743431, *5-*6 (3d Cir. 2007)("[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.").  We find in our case, that Plaintiff's prior deposition testimony is more reliable than his later Affidavit.

Also, Plaintiff's cited deposition testimony speaks for itself.

With respect Defendant's SMF ¶ 62., as Plaintiff states, he did not testify that his insomnia was corrected by the C-PAP machine or by the Serquil medication as Defendant states in ¶ 62. We disagree with Defendant's representation of Plaintiff's deposition testimony with respect to ¶ 62. Plaintiff clearly stated that, even with the machine and the medication, he did not sleep the whole night, and that if he got three hours of sleep, that was good for him. (*Id*., NT 160-161). Also, Plaintiff's Affidavit directly disputes Defendant's contention that his sleeping problem and apnea was not related to his stress. (Doc. 52, Ex. O, ¶ 223.).

Regarding Defendant's SMF ¶ 63., the evidence shows that Plaintiff testified that when he was working for Defendant he could cook, drive, have lunch, walk his dog, and watch TV and football games at Keystone College.  (Doc. 36, Ex. C, NT 161-167).

¶ 64. of Defendant's SMF is admitted.

With respect to Defendant's SMF ¶ 65., the evidence shows that Plaintiff would typically eat lunch with a couple of his co-workers, three or four of them, and that during breaks, he would go to the break room for a soda and say hello to co-workers in the room, then go back to his cube. (*Id*.).

¶ 66. of Defendant's SMF is supported by Defendant's evidence , Ex. G, Doc. 36.  Plaintiff also avers in his subsequent Affidavit that what he meant about playing the clown at work was that he would try to hide his true feelings when he was upset inside.  (Doc. 52, Ex. O, ¶ 211.).

Regarding Defendant's SMF ¶ 67., Plaintiff testified that once a month, he would go with co-workers on Friday to happy hour at bars in Scranton.  He also stated that one night, Shultz

17

bought him a couple of drinks at the Banshee.  (Doc. 36, Ex. C, NT 164, 120).

With respect to ¶ 68. of Defendant's SMF, as Plaintiff correctly states, ¶ 68. repeats, in part, ¶ 60.  Insofar as Defendant states in ¶ 68. that other than two-week period in January 2005 when Plaintiff's medication changed, he was able to concentrate and have conversations at work, we refer back to Plaintiff's testimony restated with respect to  ¶ 30. above.

Regarding ¶ 69. of Defendant's SMF, Plaintiff testified that kids crying in the background on the phone, once per week, and when somebody once banged a door behind him at work, would trigger his PTSD symptoms.  (*Id.*, 174-175).  However, as Plaintiff states, he also stated that sleeping problems with insomnia and nightmares, nervousness and stress also affected his PTSD.

¶ 70. of Defendant's SMF is admitted.

¶ 71. of Defendant's SMF is admitted, and as Plaintiff states, he also had to say he was a BOA account executive. (*Id*. NT 189-194).

¶ 72. of Defendant's SMF is admitted.

With respect to ¶ 73. of Defendant's SMF, Plaintiff testified that he was going to look for full-time CSR jobs, and that no physician or medical provider ever told him that they think it is too stressful for him to work in a CSR environment.  (*Id.*, NT 225).  Plaintiff also avers in his subsequent Affidavit that he would work full-time as a CSR if his employer was willing to provide him with accommodations for his disability. (Doc. 52, Ex. O, ¶ 248).

To the extent that we find the above stated paragraphs of Defendant's SMF  to be supported by the evidence or as admitted by Plaintiff *via* his responses to them in his COF, pursuant to Local Rule 56.1, M.D. Pa., we shall incorporate them herein by reference to the extent stated above, and

we shall not restate them.  (Docs. 36, pp. 1-20 and Doc. 50, pp. 1-21).  We also note that both

Defendant and Plaintiff have supported the stated SMF's and COF's with citation to evidence as

required.  (Docs. 36 and 50).

## V. Discussion.

Defendant BOA moves for summary judgment with respect to both of the Plaintiff's Counts

in his Complaint, *i.e.* ADA and PHRA discrimination claims, by arguing that Plaintiff did not show

that he is disabled or that he was terminated due to a disability.  (Doc. 33, p. 4).[14]  As stated,

Plaintiff raises two claims, Count I, under the ADA, and Count II, under the PHRA.  In both Counts,

Plaintiff claims that Defendant discriminated against him during his employment with Defendant

due to his disability, PTSD, and that despite requesting an accommodation, a six-hour work day,

and being qualified for his CSR position, Defendant terminated him because of his disability.

Defendant argues  that Plaintiff has failed to establish a genuine issue of material fact with respect

to his claims under the stated statutes.

Plaintiff filed his Complaint on March 8, 2006 (Doc. 1), pursuant to the ADA, 42 U.S.C.

§§ 12101, *et seq.*, alleging that Defendant discriminated against him and failed to accommodate

him regarding his PTSD disability, Count I.[15]  In Count II, Plaintiff alleges that Defendant violated

---

[14]Defendant correctly notes that since courts treat PHRA's provisions the same as the ADA's provisions, the discussions in its Brief with respect to both of Plaintiff's stated claims are combined.  (Doc. 33, p. 5, n. 3).

[15]No ADA retaliation claim is alleged in Plaintiff's Complaint. Doc. 1, ¶ 's 20.-31.  Thus, in this case, we shall not consider the ADA retaliation provision, 42 U.S.C. § 12203(a).  Rather, we shall consider only Plaintiff's ADA discrimination and failure to accommodate claim under 42 U.S.C. § 12112(a).

the PHRA, 43 P.S. § 955(a), *et seq*.  In Count II, Plaintiff alleges that Defendant discriminated against him due to his stated disability and failed to accommodate him in violation of the PHRA, 43 P.S. §§ 951, *et seq*.  Plaintiff alleges  that he had a permanent disability, that it significantly limited him in his major life functions, that he requested a reasonable accommodation for part-time work of six hours per day, and that Defendant failed to provide him reasonable accommodations for his PTSD impairment.  Plaintiff also alleges that Defendant terminated him due to his known disability.[16]

In Count I of his Complaint, Plaintiff asserts an ADA discrimination claim, seemingly pursuant to 42 U.S.C. § 12112(a), in which he contends that "the Plaintiff suffered an adverse employment decision as a result of discrimination against him because of his disability." (Doc. 1, ¶ 24.).[17]

---

[16]As stated, in his  Complaint, the Plaintiff alleges that he was unlawfully discriminated against and denied reasonable accommodation due to his disability in violation of the PHRA. (Doc. 1, ¶'s 32.-37.).  As noted, and as Defendant states (Doc. 33, p. 5, n. 3), and as Plaintiff recognizes (Doc. 48, p. 6),  for present purposes, Plaintiff's claims under the PHRA are analyzed in the same manner as his claims under the ADA.  We concur with this note of Defendant and this acknowledgment by Plaintiff.  *See Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661 (W. D. Pa. 2005)(ADA and PHRA are construed in similar fashion by federal courts).

[17]Plaintiff correctly did not name Williamson or Shultz  as a Defendant in Count I since it has been held in our Circuit that individuals are not liable for violations of Titles I and II of the ADA.  Rather, an employer is liable for violations of the ADA. *See Emerson v. Theil College*, 296 F. 3d 184 (3d Cir. 2002).
The ADA provides that:

> no covered entity shall discriminate against a qualified
> individual with a disability because of the disability of
> such individual in regard to job application procedures,
> the hiring, advancement, or discharge of employees,
> employee compensation, job training, and other terms,
> conditions, and privileges of employment.

Presently ripe for disposition is Defendant's Motion for Summary Judgment.  **(Doc. 29)**.[18]

### 1. ADA Claim

The ADA prohibits discrimination "against a **qualified individual with a disability** because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). (emphasis added).  It is the Plaintiff's position that he was terminated from his employment as a CSR with Defendant due to his disability (PTSD) and that the reasons offered by the Defendant for his dismissal were a pretext for discrimination.  He also alleged a cause of action for failure to accommodate under §12112(a) of the ADA.  (Doc. 1, Count I).  As noted, Plaintiff did not assert a cause of action for retaliation under 42 U.S.C. § 12203(a) of the ADA.

There are three steps in the analysis of pretext discrimination cases.  *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, the Plaintiff must establish a *prima facie* case of discrimination.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).  Upon such a showing by the Plaintiff, the burden shifts to the employer to produce evidence of a legitimate,

---

42 U.S.C. § 12112(a).
    A covered entity is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An employer is defined as a "person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks or in the current or preceding calendar year, and any agent of such person . . ." 42 U.S.C. § 12111(5).

[18]Defendant seeks summary judgment with respect to both of Plaintiff's claims.

nondiscriminatory reason for the adverse decision.  *Id*.  Once the Defendant satisfies this burden, the burden of proof falls back onto the Plaintiff to show, by a preponderance of the evidence, that the Defendant's explanation is a mere pretext for discrimination.  *Id*.

The Third Circuit recently stated in *Schofield v. Metropolitan Life Ins. Co.*, 2007 WL 3215411, * 4 (3d Cir. 2007)(Non-Precedential), "[t]o avoid summary judgment an employment discrimination plaintiff must present sufficient evidence from which a reasonable fact-finder could conclude that the employer's proffered legitimate, nondiscriminatory reasons are 'either a *post hoc* fabrication or otherwise did not actually motivate the employment action.'"(citation omitted).

Defendant argues that Plaintiff has not established a *prima facie* case under the ADA since he has not produced evidence that he is a "qualified individual with a disability."  Plaintiff contends that he had a disability of which Defendant was aware and that he was substantially limited in his major life activities.

The Court in *Bjorklund v. Phila. Housing Auth.*, 118 Fed. Appx. 624, 625-626 (3d Cir. 2004), stated that Plaintiff must prove the following elements in an ADA action:

> (1) he [plaintiff] was a qualified individual with a disability or who
> was regarded as having a disability; [FN1] and (2) that he suffered
> an adverse employment action as a result of his disability or
> perceived disability.  *Tice v. Centre Area Transp. Auth.*, 247 F.3d
> 506, 511-12 (3d Cir. 2001); *see also Rinehimer v. Cemcolift, Inc.*,
> 292 F.3d 375, 381 (3d Cir. 2002).

> The ADA defines a "qualified individual with a disability" as

> > an individual with a disability who, with or without
> > reasonable accommodation, can perform the
> > essential functions of the employment position that
> > individual holds or desires.

22

42 U.S.C. § 12111(8).

In order for a Plaintiff to establish a discrimination claim under the ADA, he must show that he was a "qualified individual with a disability" at the time the adverse employment actions were taken. *Bjorklund, supra.* Plaintiff seeks both prospective and retrospective relief since he requests both back pay and front pay. (Doc. 1, pp. 7-8). The prospective relief that Plaintiff seeks is front pay. The retrospective relief that Plaintiff seeks also involves damages. In order to maintain a claim for retrospective relief under the ADA for Defendant's allegedly discriminatory acts, Plaintiff must establish that he was a "qualified individual with a disability" during the applicable time. *Felix v. N.Y. City Transit Auth.*, 154 F.Supp. 2d. 640, 652 (S.D. N.Y. 2001). In order to maintain a claim that he is entitled to prospective relief, Plaintiff must establish that he is presently a "qualified individual with a disability."

We again note that Plaintiff's pleading does not raise a claim under the ADA retaliation provision, 42 U.S.C. § 12203(a); rather, it raises an ADA discrimination claim under 42 U.S.C. § 12112(a) and a failure to accommodate claim.

### A. Prima facie case

A Plaintiff establishes a *prima facie* case under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) he has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies*, 134

23

F.3d 576, 580 (3d Cir. 1998), *citing Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).[19]

Under the ADA, as the *Thompson* Court stated, a person has a disability if:

> The ADA defines the term "qualified person with a disability" as follows:
>
> > The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.  For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.
>
> 42 U.S.C. § 12112(8).  42 U.S.C. § 12102(2) sets forth three possible definitions of disability for purposes of the ADA: "The term 'disability' means, with respect to an individual  - - (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

371 F. Supp. 2d at 671-672 (Citation omitted).

Defendant argues that even though Plaintiff has a PTSD impairment as a result of his military service during Vietnam War, having an impairment does not render a person disabled under the ADA.  Defendant states that there is no evidence that, due to his PTSD, Plaintiff had any major life activity that has been substantially limited.  (Doc. 33, pp. 5-7).  In his  pleading, Plaintiff alleges that

---

[19]Defendant correctly state the elements of a *prima facie* case of discrimination under the ADA in its Brief.   Doc. 33, p. 5.

his "impairment substantially limits one or more of his major life activities." (Doc. 1, ¶ 25.).[20]

The Court in *Strayer v. New Enterprise Stone & Lime Co., Inc.*, 2006 WL 2773479, *4-*5

(W.D. Pa.), stated as follows:

> [P]laintiffs claiming a physical impairment under the ADA must
> demonstrate "[a]ny physiological disorder, or condition, cosmetic
> disfigurement, or anatomical loss affecting one or more of the
> following body systems: neurological, musculoskeletal, special
> sense organs; respiratory (including speech organs), cardiovascular,
> reproductive, digestive, genito-urinary, hemic and lymphatic, skin,
> and endocrine[.]" 29 C.F.R. § 1630.2(h)(1).  The major life
> activities that the impairment must substantially limit are defined
> as "functions such as caring for oneself, performing manual tasks,
> walking, seeing, hearing, speaking, breathing, learning, and working."
> 29 C.F.R. § 1630.2(i).  Such an activity is "substantially limited" if
> the individual is "[u]nable to perform a major life activity that the
> average person in the general population can perform," or if she
> is "[s]ignificantly restricted as to the condition, manner or duration
> under which [the] individual can perform a particular major life
> activity as compared to the condition, manner, or duration
> under which the average person in the general population can perform

---

[20]Insofar as Defendant argues in its Reply Brief (Doc. 58, p. 3) that Plaintiff's Affidavit (Doc. 52, Ex. O, ¶ 97.) and COF (Doc. 50) and their references  to "Dr. Soto" a psychiatrist with BOA, are incorrect, as noted, we have stricken Plaintiff's references to "Dr. Soto" and substituted Dr. Santos of the VA for them.  (Doc. 59).   Also, Plaintiff's averment that he discussed an accommodation with a psychiatrist from BOA prior to requesting one, is not correct.

In its Reply Brief (Doc. 58, pp. 3-6) Defendant also argues insofar as Plaintiff's Affidavit subsequent to his deposition (Doc. 52, Ex. O) contradicts his prior deposition testimony, his Affidavit should be disregarded.  We agree with Defendant (Doc. 58, pp. 3-6), based upon the above discussion of the SMF's, that to some extent the Plaintiff's Affidavit contradicts his deposition testimony.  We find that Plaintiff's Affidavit, insofar as it contradicts his deposition testimony (see Doc. 58, pp. 3-6), should be disregarded.  *See Jiminez*, 2007 WL 2473431, * 6. Thus, we shall disregard the averments of Plaintiff in his subsequent Affidavit which we find to be contradictory to his prior deposition testimony.  As stated, in its Reply Brief, Defendant points out some of the contradictory averments.  (Doc. 58, pp. 3-6).

that same major life activity." 29 C.F.R. § 1630.2(J)(1)(i)-(ii).

> The following factors should be considered in determining
> whether an individual is substantially limited in a major life activity:
> (i) the nature and severity of the impairment; (ii) the duration
> or expected duration of the impairment; and (iii) the permanent
> or long term impact, or the expected permanent or long
> term impact of or resulting from the impairment.
> 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

Defendant contends that the evidence does not show that Plaintiff was substantially limited in a major life activity by his PTSD. Plaintiff argues that he is a qualified person with a disability and that he is able to perform the essential functions of the CSR job with an accommodation of working six hours per day. Both Plaintiff and Defendant agree that whether Plaintiff is a person with a disability is a factual determination based on the specific evidence and facts, and that this determination is made on a case-by-case basis. (Doc. 48, p. 9 and Doc. 33, p. 6).[21]

Based on the present record, we agree with Defendant that Plaintiff's PTSD was not a disability under the ADA, and Plaintiff was not a disabled person under the ADA. We find that Plaintiff was not substantially limited in any major life activity at the time of his termination with BOA in May 2005. Thus, we agree with Defendant that Plaintiff has failed to meet the first element of a *prima facie* case under the ADA.

As stated above, and as Defendant states (Doc. 33, p. 8), Plaintiff's Complaint does not specifically aver how his impairment substantially limits one or more of his major life activities.

---

[21] As Defendant notes (Doc. 33, p. 6, n. 4), Plaintiff does not show that Defendant regarded him as having a substantially limiting impairment since his PTSD did not substantially limit one or more of his life activities.

26

(Doc. 1, ¶ 25.).   In his Brief, Plaintiff states that he has shown he has a disability "by virtue of a mental impairment that substantially limits a major lige activity."  (Doc. 48, p. 11).  Plaintiff argues that his PTSD is a mental impairment and that it has substantially limited his major life activities of sleeping, concentrating, socializing and working.  (*Id.*, pp. 15-17).  Plaintiff argues that he was prescribed Prozac for his nightmares  and he was given Trazodone for his sleeping problems.  He states that his sleeping problem caused him to forget everything and prevented him from doing his job. (*Id.*, p. 15).  He claims that his sleeping problem caused him to feel numb and not concerned about anything.  He states that he is depressed, offensive, and that he socialized very little while working for Defendant.  He states that he has flashbacks when he hears children crying in the background of telephone calls, and that yelling affects his concentration.  He states that he suffers from nervousness and startles very easily.  (*Id.*).  Thus, Plaintiff states that his concentration is affected when he hears children crying or when he is startled.

Plaintiff states that in 2004, he requested an accommodation of working six hours per day, and that this would have given him more time to concentrate.  (*Id.*, p. 16).  Plaintiff states in his brief that before he requested this accommodation, "he discussed [it] with Dr. Soto, a Psychiatrist from [BOA]."  (*Id.*).  However, as discussed above, Plaintiff has conceded that no "Dr. Soto," Psychiatrist from BOA, existed, and that any references to this doctor were incorrect and should be read as referring to Dr. Santos of the VA.  (*See* Doc. 59).  As noted, Plaintiff's averment that he discussed an accommodation with a psychiatrist from BOA prior to requesting one, is not correct.

While Plaintiff's Affidavit (Doc. 52, Ex. O, ¶ 97.) is now read to aver that prior to Plaintiff's 2004 requested accommodation, he discussed it with Dr. Santos of the VA, Plaintiff does not point

to any VA medical records in evidence which substantiate this averment.  Further, Dr. Santos, unlike the non-existent Dr. Soto, was a doctor with the VA, and not a psychiatrist with BOA.  Thus, Plaintiff did not in fact discuss his accommodation with a medical representative of Defendant before he made his request in 2004.  Nor can ¶ 97. of Plaintiff's Affidavit now be used to show support that he had a record of an impairment with Defendant (or its medical representative) that substantially limited any of his major life activities or to show that Defendant regarded him as having a substantially limiting impairment that he did not have or that his PTSD was substantially limiting when it was not limiting to this extent.  Nor can Plaintiff now show that Defendant, through its medical representative, was aware of his PTSD impairment prior to him requesting an accommodation in 2004.   Plaintiff cannot show that Defendant knew the requested accommodation was related to his PTSD impairment since it is now undisputed that he did not discuss the accommodation with a medical representative of Defendant before he requested it.

We also agree with Defendant (Doc. 58, p. 7) that, simply because Plaintiff's employment documents, *i.e.* his Employee Profile, indicated that he was a disabled Vietnam Veteran with a 60% disability, this does not show that all of Plaintiff's supervisors knew that he had PTSD, and it does not show that they knew his requests to work part-time were related to his PTSD.  We also agree with Defendant that Plaintiff cannot point to any limitations in his major life activities which he had after his May 2005 termination.  (*Id.*, p. 11).  *See Sever v. Henderson*, 381 F. Supp. 2d 405, 414 (M.D. Pa. 2005).

As the Court stated in *Zhai v. Cedar Grove Municipality*, 183 Fed. Appx. 253, 255-256 (3d Cir. 2006), the ADA requires Plaintiff to show that "[he] has an impairment that substantially limits

at least one major life activity." (Citation omitted).  The *Zhai* Court noted that simply a diagnosis of

PTSD does not prove Plaintiff is disabled, and Plaintiff must show how the disorder has interfered

with a major life activity.  *Id.*, at 256, n. 2.  In our case, Plaintiff Walsh claims that his PTSD has

substantially limited his major life activities of sleeping, concentrating, socializing and working.  The

*Zhai* Court noted that to qualify as an impairment to major life activities, things such as "caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing learning and

working" must be shown.  *Id.* (Citing 29 C.F.R. §1630.2(i)).  The *Zhai* Court also cited *Hamilton v.*

*SW. Bell Tel. Co.*, 136 F. 3d 1047, 1050 (5ht Cir. 1998)("noting that PTSD, standing alone, is not

necessarily an impairment under the ADA").  *Id.*[22]  We agree with Defendant that in our case,

Plaintiff Walsh has only shown that he has PTSD, but he has failed to show how this condition has

interfered with a major life activity.

     This Court in *Sever* stated that "[a]lthough [PTSD] may constitute a mental impairment for

purposes of the [ADA], it does not follow that the impairment is disabling."  381 F. Supp. 2d at 418.

The *Sever* Court also stated that "simply informing an employer of a particular condition is not

tantamount to providing the employer with knowledge that the employee is substantially limited

in some major life activity."  *Id.*  As mentioned, and as Defendant recognizes in its Reply Brief, Doc.

58, p. 3, Plaintiff can no longer rely upon his erroneous and mistaken averment that he conferred

with a "Dr. Soto," psychiatrist from BOA, about his need for an accommodation before he

requested one in 2004 to show that Defendant was aware that he was substantially limited in any

---

[22]Defendant also cites to the *Hamilton* case.  (Doc. 33, p. 6).

life activity.  As discussed, we also agree with Defendant, Doc. 58, pp. 3-6, that, insofar as Plaintiff's voluminous 21-page, 248-paragraph subsequent Affidavit (Doc. 52, Ex. O), executed in June 2007 after his December 2006 deposition, contradicts, without explanation, his sworn deposition testimony, we shall disregard Plaintiff's Affidavit.  *See Baer v. Chase*, 392 F. 3d 609, 624 (3d Cir. 2004); *Jiminez*, 2007 WL 2743431.

Plaintiff's evidence falls short of meeting his burden to demonstrate that his PTSD impairment was disabling since he has failed to sufficiently show, through his evidence, that this impairment substantially limited any of his major life activities.  Thus, while Plaintiff points to the fact that he gave Shultz a copy of a page (third) of his VA records indicating that he had PTSD and was being treated for PTSD, this does not show that Defendant knew he was substantially limited in some major life activity.  (Doc. 52, Ex. D and Doc. 52, Ex. O, ¶'s 176.-179.).  In fact, this report stated as follows:

> A review of the outpatient treatment records indicates that Mr. Walsh is treated there routinely, each time being oriented by three, having no memory deficit, an affect that is appropriate, he is cooperative, relevant and spontaneous.  It is noted that he is functioning fairly well at his job at a bank as a service representative.  His global assessment functioning score has fluctuated since 1999 from 55 to 65, with 65[23] being the most recent score on July 6, 2001, indicate (sic) of mild symptoms.

(*Id*.).

---

[23]A GAF of 65 indicates some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Ed. 1994).

Contrary to Plaintiff's current claims, the VA Report indicated that despite his PTSD, ranging from mild symptoms to serious symptoms, and despite his nightmares and avoidance of others, the major life activities which Plaintiff now claims have been substantially limited by his PTSD, his attention span and concentration were adequate, his judgment and insight were fair to good, his remote and recent memory were grossly intact, he was able to function in his employment with BOA as a CSR, and "his everyday symptoms" were "noted to be mild to moderate." (*Id*.).   Thus, portions of Plaintiff's own evidence do not show that his PTSD was disabling.

The VA Report further stated:

> The results of the VA examination reveal a depressed mood, an extremely defensive man with forceful speech.  He was coherent and relevant, but felt worthless, helpless and hopeless.  He had passive suicidal thinking without any intent or plan. He continues to have nightmares and is extremely avoidant of others.  His remote and recent memory were grossly intact, attention span and concentration were adequate and his judgment and insight were fair to good.  He is continued to be diagnosed with post traumatic stress disorder, chronic with a global assessment functioning score of 41, indicative of serious symptoms.

> It is determined that the functioning level provided at the VA examination could meet the requirements necessary for a 70% evaluation, however, the fact that he continues to function in his employment, and routine treatment records showing a clearer picture of his everyday symptoms, noted to be mild to moderate, the current 50% evaluation is confirmed and continued.

(*Id*.).

Thus, despite Plaintiff's subjective complaints about the affects of his PTSD, the VA Report indicated that Plaintiff was able to function in his job and that his everyday symptoms were only mild to moderate.

31

In his deposition, Plaintiff stated that Shultz told him to produce a document showing that he had PTSD on May 3, 2005. (Doc. 36, Ex. C, NT 91-92). As discussed, the VA document Plaintiff provided to Shultz, while it informed BOA of his PTSD condition, it certainly did not provide BOA with knowledge that Plaintiff was substantially limited in any major life activity.  Further, as stated, Plaintiff's Employee Profile with Defendant, which simply indicated that he was a disabled Vietnam Veteran with a 60% disability (10% due to diabetes, Doc. 52, Ex. O, ¶49.) clearly did not provide Defendant or Plaintiff's BOA supervisors with knowledge that Plaintiff was substantially limited by his PTSD in any major life activity. Also, despite Plaintiff's averment that he told Williamson he had PTSD and that she knew he was a disabled veteran in 2000, Doc. 52, Ex. O, ¶ 71., we agree with Defendant (Doc. 58, p. 4) that this is not sufficient to show that she knew that Plaintiff was substantially limited by his PTSD in any major life activity.  With respect to Plaintiff's supervisor Jim Bell, Plaintiff testified that he did not remember telling Bell that he had PTSD when he advised Bell that he may have to go to the Lyons VA Center for a "tune-up" after the "9/11" terrorist attacks. (Doc. 52, Ex. A, NT 86-88).  In his Affidavit, Plaintiff avers that he told Bell about his PTSD symptoms and that he needed to go to the Lyons VA Hospital for a tune-up after September 11, 2001.  (Doc. 52, Ex. O, ¶ 87.).  We shall disregard Plaintiff's contradictory averments of his subsequent Affidavit.

Regardless of the fact that Plaintiff's Affidavit blatantly contradicts his sworn deposition testimony about what he told Bell, again, Plaintiff does not claim that Bell had knowledge that Plaintiff was substantially limited by his PTSD in any major life activity.  Nor did Plaintiff advise Shultz as to how his PTSD affected his daily life, and he does not claim that Shultz had knowledge

that he was substantially limited in any major life activity due to his PTSD.   Plaintiff provided Shultz with the one page of the VA report about his PTSD condition (Doc. 52, Ex. D) which, as discussed, clearly did not show that Plaintiff was substantially limited in any major life activity.   Thus, contrary to Plaintiff's assertion (Doc. 48, p. 11), we do not find that Defendant regarded Plaintiff as having an impairment that substantially limited any of his major life activities, *i.e.* "activities that are of central importance to daily life." *See Sever*, 381, F. Supp. 2d at 414 (citation omitted).  As the *Sever* Court noted, just because the Defendant employer is aware of Plaintiff's impairment is not sufficient to show that the Defendant regarded Plaintiff as disabled or that this perception caused Plaintiff's termination.  381 F. Supp. 2d at 416, n. 5(citation omitted).  Rather, Plaintiff "must show that the employer believed that a major life activity was substantially limited by the Plaintiff's impairment." *Id*.  Thus, simply because Plaintiff may have advised his three supervisors of BOA that he had PTSD or that he was a disabled veteran, does not suffice to show that they were aware that Plaintiff was substantially limited in any major life activity.

As Defendant states, the burden is on Plaintiff to prove that he had a protected disability under the ADA, and it is high standard that is difficult to meet.  (Doc. 33,p. 7).  *See Blielek v. Allegheney Ludlum, Corp.*, 2006 WL 2773487, * 12 (W. D. Pa. 2006).[24]

In his Affidavit, Plaintiff avers as to how his life activities are affected by his PTSD.  Plaintiff states:

> 51.     It is totally denied that my activities of daily living are not
> affected.  I have sleep disturbance with insomnia and nightmares on a

---

[24]A copy of the *Blielek* case is attached to Defendant's Brief, Doc. 33-2, as well as to Doc. 35.

> regular basis, I am depressed, defensive, I socialized very little while
> I worked for Bank of America (BOA) and socialize less now, I get flashbacks
> when I hear children crying which would occur in the background of a
> phone call while I was working at BOA, I can't handle anyone yelling,
> my concentration is affected I suffer from nervousness and I startle very
> easily, especially if someone comes up from behind [Dep. at 30-31, 80,
> 173-174, Exhibits B, F].

(Doc. 52, Ex. O, ¶ 51.).

As stated, Plaintiff's Complaint failed to identify the specific life activities which he claimed were substantially limited by his PTSD. We agree with Plaintiff that, based on the evidence, he has an impairment, namely PTSD. (Doc. 52, Ex. O, ¶'s 29.-36.). Defendant does not appear to contest the fact that Plaintiff had PTSD. Rather, Defendant argues that Plaintiff has failed to show through his evidence that his PTSD substantially limited him in any major life activity. Plaintiff claims that he has shown that his PTSD substantially limited him in major life activities. Plaintiff points to his contention that he has flashbacks when he hears children crying in the background of phone calls while working as a CSR for BOA. Plaintiff claims that he cannot handle yelling and that his concentration is affected. He states that he was nervous and easily startled. (Doc. 48, p. 15). However, Plaintiff testified that only once did a co-worker slam a metal door and that the big loud noise startled him. (Doc. 36, Ex. C, NT 174). Plaintiff testified that a trigger for his PTSD symptoms was kids crying in the background on the telephone. (*Id*.). Plaintiff stated that this would happen once a week or so, and that "sometimes you wouldn't get them [calls with kids crying in background] every month." (*Id*., NT 174-175). When Plaintiff was asked if there were anything else that triggered his PTSD symptoms while he was working for Defendant, he testified, "No." (*Id*.).

34

We do not find that Plaintiff has met his high burden to show that his symptoms of nervousness, flashbacks from children crying in the background of phone calls, and being startled from someone coming up behind him or slamming a door, constitute substantial limits on a major life activity. These infrequent and short duration events did not amount to substantial limits on Plaintiff's life activities based on the evidence in the record. As discussed above, Plaintiff testified at his deposition that these occurrences did not happen frequently at work, and when they did occur, any limitation caused by his PTSD from these events, such as nervousness or being startled when the metal door was slammed at work or when he heard children crying in the background while on phone calls, based on his experiences was clearly not substantial.

The *Sever* Court stated:

> "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment."*Toyota Motor Mfg.,* 534 U.S. at 198, 122 S.Ct. 681. Instead, a claimant must "prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial." *Id.*

381 F. Supp. 2d at 414.

The *Sever* Court also stated:

> The regulations define mental impairment as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). The term "major life activities" refers to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Thus, "major life activities" refers to activities that are of central importance to daily life. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

35

*Id*.

The Court in *Sever* stated that the disability "determinations are to be made as of the time the adverse employment action was taken." *Id*.

Plaintiff also claims that his PTSD affected his ability to concentrate and to think.  However, as Defendant points out, Plaintiff testified that the only time he had to leave work because of his PTSD was in early January 2005, when he had to leave work before his shift ended because the VA changed is medication and tweaked it (*i.e.* the VA added Prozac to the Zoloft).  (Doc. 36, Ex. C, NT 172-177).  Plaintiff also stated that after "9/11" he wanted to go to the hospital, but other than that, "I never asked for time off for anything like that.  I figured I would keep my mind occupied and help the people out who  helped me." (*Id*. NT 177).  The January 2005 situation was alleviated after Plaintiff stopped taking the two medications. Plaintiff testified that he did not have to miss work at any other time due to his PTSD. (*Id*. NT 176-177).  The *Sever* Court stated that "[a] court must also assess the limitation of a major life activity in light of any corrective measures the Plaintiff uses to mitigate the impairment."  381 F. Supp. 2d at 414.

As Defendant argues (Doc. 58, pp. 5-6), Plaintiff's subsequent Affidavit, in which he attempts to elaborate on his prior deposition testimony, and his averment  that when he needed time off due to PTSD, he would take personal, vacation and sick time (Dc. 52, Ex. O., ¶ 94.), to the extent it contradicts his deposition testimony that the only time he had to leave work because of his PTSD was in early January 2005 when his medication was changed, should not be considered.  As stated, to the extent that Plaintiff's Affidavit contradicts his deposition testimony, we disregard his Affidavit. *See Jiminez, supra*.  Indeed, as Defendant notes (Doc. 58, p. 6, n. 4), Plaintiff's own Complaint avers

36

that "During January 2005 due to a change in medication, [Plaintiff's] disability began to affect his thought processes." (Doc. 1, ¶ 12.). Defendant points out (Doc. 58, p. 6) that Plaintiff also avers in his Affidavit that possibly as far back as October 2004, he informed Williamson that his medication was changed by the VA and that he was having problems as a result. (Doc. 52, Ex. O., ¶ 124.). However, as stated, Plaintiff testified at his deposition and averred in his Complaint, that his medication change occurred in January 2005, and that this change only affected him for two weeks. (Doc. 52, Ex. A, NT 171-172). Plaintiff's Affidavit, to the extent that it contradicts his sworn deposition testimony, simply cannot be accepted to create genuine issues of fact. *See Jiminez, supra*. In fact, Plaintiff testified that other than the stated two-week period in January 2005, he was able to understand what his job required, he was able to concentrate and converse. (*Id*.). Even during the limited two week period when Plaintiff's medication change affected him, he testified only that he "was a little shaky." (*Id*.). Clearly, Plaintiff's PTSD was not to such a degree that he was significantly restricted as to his performance of any major life activity, even during the two weeks in January 2005.[25]

Plaintiff testified that he had symptoms of nervousness when he was employed with Defendant, but that it was much worse after his employment ended. (*Id*, NT 173). As stated, we only consider whether Plaintiff's impairment had a substantial limit on his specified major life activities as of the time of his termination. *See Sever*, 381 F. Supp. 2d 414. As mentioned, Plaintiff

---

[25]We again note that we agree with Defendant that Plaintiff, in part, through his Affidavit, tries to create issues of material fact by contradicting his own deposition testimony. (Doc. 58, pp. 3-6). To the extent Plaintiff's subsequent Affidavit contradicts his prior sworn deposition testimony, we disregard his Affidavit. *See Jiminez, supra*.

testified that other than the two weeks in January 2005 when the VA changed his medication, he was able to concentrate and have conversations, and he was able to do his job. (*Id*. NT 172). As Defendant states, while Plaintiff tries to create issues of fact in his Brief regarding his claim that his PTSD substantially limits a major life activity (Doc. 48, p. 11), the evidence does not bear out such a dispute.

As discussed, we find that Plaintiff did indeed have an impairment, *i.e.* PTSD, but we find that he did not have a disability that substantially limited a major life activity. As the *Strayer* Court stated:

> [T]here is a difference between a disability and an impairment. In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the U.S. Supreme Court stated as follows:
>
>> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limit" a major life activity. *Sutton*, 527 U.S. at 482-83, 119 S.Ct. at 2146-47, 144 L.Ed.2d at 462.

*Id*. at * 5.

The *Strayer* Court further stated:

> "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 195, 122 S.Ct. at 690, 151 L.Ed.2d at 629. "To qualify as disabled, a claimant must further

> show that the limitation on the major life activity is
> "substantial."  *Id.*

*Id.* * 5.

Plaintiff's nightmares, nervousness and being easily startled, while they may be difficulties, do not, based on the evidence, limit any of his major life activities.  As Defendant states, Plaintiff did not testify that his difficulty sleeping and his nightmares substantially limited him  in this major life activity.  (Doc. 33, pp. 10-11 and Doc. 52, Ex. A, NT 159-161).  Also, as Defendant states, Plaintiff admitted that he was able to socialize with his co-workers and go to his nephews' sporting events.  (Doc. 33, pp. 12-13 and Doc. 52, Ex. A , NT 161-167).  Plaintiff could drive, walk his dog, read, and prepare his own meals.  (*Id.*).  Further, even during his one-time problems in January 2005 requiring him, on one occasion, to leave work early, Plaintiff was able to go back to work and was only a little shaky for two weeks despite having suffered from the change in his medication. Plaintiff was certainly bothered by loud noises, children crying in the phone, metal doors slamming and trouble sleeping, but we agree with Defendant (Doc. 33, pp. 8-14) that the record simply does not contain sufficient evidence that Plaintiff's stated problems rendered his PTSD a disability recognizable under the ADA.

As the Court in *Strayer* indicated, and as Defendant recognizes  (*Id.*, pp. 13-15), our inquiry now must focus as follows:

> Having found that [plaintiff] did not raise a genuine issue of
> material fact regarding whether he is disabled under 42 U.S.C. § 12102(2)(A),
> the Court must now assess whether [plaintiff] raised a genuine
> issue of material fact regarding whether he is statutorily disabled due to
> either a record of a substantially impaired major life activity or from
> Defendant regarding him as having such an impairment.  42 U.S.C. §
> 12102(2)(B)-(C).

*Id.* at \*7.

We agree with Defendant, as discussed above, that Plaintiff did not produce evidence that he had a record of a disabling impairment. (*Id.*).  Plaintiff's reliance on his Employee Profile which listed him as a disabled veteran does not show a record of a substantially impaired major life activity.   Nor does the fact that, when Plaintiff had his medication changed by the VA in January 2005, and he had to leave work early one day, show the requisite impaired major life activity. Thus, the issue is whether Plaintiff has produced sufficient evidence to permit a reasonable fact finder to conclude that Defendant BOA regarded him as disabled pursuant to 42 U.S.C. § 12102(2)(C).  *Id.*

As discussed above, Plaintiff cannot rely upon so-called "Dr. Soto," an alleged psychiatrist of BOA, to show that Defendant regarded him as having a disability that required an accommodation, *i.e.* a six-hour work day, since Plaintiff has conceded that Dr. Soto does not exist. Nor can Plaintiff rely upon his Employee Profile, which only indicated that he was a 60 % disabled Veteran and did not state that this was due to PTSD, to show Defendant regarded him as having a disability and was aware he required an accommodation.   Further, even though Plaintiff did provide Shultz with the stated one page of a VA Report indicating that he had PTSD , as discussed, this document did not show that Plaintiff's PTSD substantially limited any of his major life activities. (Doc. 52, Ex. D).

The Court in *Strayer* stated:

> In *Sutton v. United Airlines*, the U.S. Supreme Court explained
> the contours of this inquiry:

> Subsection (C) provides that having a disability includes
> "being regarded as having," § 12102(2)(C), "a physical
> or mental impairment that substantially limits one or more
> of the major life activities of such individual." § 12102(2)(A).
> There are two apparent ways in which individuals may fall
> within this statutory definition: (1) a covered entity
> mistakenly believes that a person has a physical impairment
> that substantially limits one or more major life activities,
> or (2) a covered entity mistakenly believes that an actual,
> nonlimiting impairment substantially limits one or more
> major life activities.  In both cases, it is necessary that a
> covered entity entertain misperceptions about the individual - -
> it must believe either that one has a substantially
> limiting impairment that one does not have or that one has a
> substantially limiting impairment when, in fact, the impairment
> is not so limiting.
> *Sutton v. United Airlines*, 527 U.S. 471, 489, 119 S.Ct. 2139,
> 2149-50, 144 L.Ed.2d 450, 466-67 (1999).

*Id.*

We agree with Defendant that Plaintiff's stated evidence is not enough to show that BOA regarded Plaintiff as disabled under § 12102(2)(C).  Just because Plaintiff's supervisors were aware that Plaintiff had PTSD, and knew that he had to leave work early once due to a medication change, does not show that BOA considered him as disabled under the ADA.  We do not find any evidence that BOA perceived Plaintiff's impairment as restricting one or more of his major life activities.  Despite Plaintiff's supervisors knowing he had PTSD, and despite the fact that Plaintiff was having difficulty due to his medication change and had to leave work early once in January 2005, these limitations were short in duration, as Plaintiff stated they lasted two weeks, and there is no evidence that they were permanent restrictions on Plaintiff.

Plaintiff himself felt he could perform his job, understand what the job required, concentrate, and converse while working for Defendant, other than the stated January 2005 two-

41

week period.  (Doc. 52, Ex. A, NT 171-172).

The *Strayer* Court stated:

> In the context of work as a major life activity, the ADA requires
> a greater degree of impairment than the inability to perform
> specific duties.  The "tasks unique to any particular job are not
> necessarily important parts of most people's lives." *Toyota Motor
> Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 201, 122 S.Ct. 681, 693,
> 151 L.Ed.2d 615, 633 (2002).  Thus, "occupation-specific tasks
> may have only limited relevance" in deciding whether an
> employer regards its employee as disabled under the ADA.  *Id.*

*Id.* at * 9.

We find that Plaintiff has failed to show a genuine issue of material fact as to whether BOA

regarded him as disabled.  We agree with Defendant (Doc. 58, pp. 16-17) that Mr. Wideman's

report (Doc. 52, Ex. B), Plaintiff's treating counselor at Scranton VA Center, does not show that

Plaintiff was unable to perform any major life activity or that he was substantially limited in any

major life activity.  Rather, this report recounts Plaintiff's narrative of his symptoms and his self-

reported difficulties at his job with BOA.  As Defendant states, this report clearly does not discuss

in detail any substantial limitations on any of Plaintiff's major life activities.

Plaintiff also submits the May 3, 2006 Report of Dr. Burger.  (Doc. 52, Ex. F).  However, Dr.

Burger's 2006 Report addressing Plaintiff 's condition is not during the relevant time, *i.e.* the time

of his employment with BOA.  Dr. Burger's Report does not state the doctor's opinion of Plaintiff's

condition at the time of the challenged employment action.  It discusses Plaintiff's condition after

his termination with Defendant.  As stated, this Court in *Sever* held that the determinations as to

whether a Plaintiff is disabled must be made as to the time of the adverse employment action.  381

F. Supp. 2d at 414.

Further, Dr. Burger's May 2006 Report found as follows:

> **Exam:**
> **Const:**        Appears healthy and well developed.  No signs of acute
> distress present.  Motor activity is calm.
> **Psych:**        Patient's attitude is cooperative. Displays cooperation,
> depression, distrustfulness periodically, euthymic mood periodically,
> irritability periodically and sadness during encounter.  Patient's
> affect is appropriate to mood.  Patient shows poor eye contact.
> Speech is clear, fluent and spontaneous.  No aphasia noted while
> speaking.  No apparent agnosia present.  Language processing
> is intact.  Thought processes demonstrate coherence and logic.
> Associative thinking is intact.  Patient does not have delusions or
> hallucinations.  Suicidality: none.  Homicidality: none.
> Dangerousness: none.  Alert and oriented x3.  Recent and remote
> memory intact.  Attention span and concentration are normal.
> Judgment is realistic and intact.  Insight is appropriate and intact.
> Knowledge and vocabulary are consistent with education.

(Doc. 52, Ex. F).

We do not find that Dr. Burger's May 2006 assessment of Plaintiff even shows that Plaintiff was substantially limited in any major life activity at that time.  (*Id*.).

Since we find that Plaintiff suffers no disability under any provision of the ADA, we shall recommended that Defendant's Summary Judgment Motion be granted with respect to both of Plaintiff's Counts I (ADA) and II (PHRA).[26]  Since we have found that Plaintiff did not establish the first element of a *prima facie* case of discrimination under the ADA, we shall not consider the remaining two elements.

---

[26]As noted above, and agreed by the parties, Plaintiff's PHRA claims are analyzed in the same manner as his ADA claims.  *See Taylor v. Phoenixville School Dist*., 184 F. 3d 296, 306 (3d Cir. 1999).  Thus, Plaintiff's PHRA claim, Count II, as against Defendant, should also fail for the same reasons as his ADA claim fails.  Because there are  no other claims against Defendant,  we shall also recommend that the Court enter Judgment in Defendant's favor and against Plaintiff with respect to this entire case.

**VI.   Recommendation.**

Based on the foregoing, we respectfully recommend that Defendant's Summary Judgment Motion **(Doc. 29)** be granted with respect to Plaintiff's both of Plaintiff's Counts I (ADA) and II (PHRA), and that Judgment be entered in favor of Defendant and against Plaintiff.

<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 26, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL WALSH, | : | CIVIL ACTION **3:CV-06-0504** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| BANK OF AMERICA, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 26, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                                                    **s/ Thomas M. Blewitt**
                                                    **THOMAS M. BLEWITT**
                                                    **United States Magistrate Judge**


**Dated: Novembr 26, 2007**